



## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable A. W. Meadows, Director
Texas Aeronautics Commission
Senate Chamber
Austin, Texas

Dear Sir:

Opinion No. O-6990

Re: Will the statutes of this
State meet the requirements
set out by the Secretary of
Commerce relative to the
National Airport Plan?

Your request for our opinion on the above question
reads as follows:

"The following quotations are from the
Secretary of Commerce report on the National
Airport Plan:

"'That any project for which Federal aid is
requested must meet with the approval of the
Administrator of Civil Aeronautics as to scope
of development and cost, conform to Civil
Aeronautics Administration standards for
location, lay-out, grading, drainage, paving,
and lighting, and all work thereon be subject
to the inspection and approval of the Adminis-
trator of Civil Aeronautics and his designated
representatives.

"'In order to participate in the Federal aid
program, a State shall --

"'(a) Establish and empower an official or an
official body equipped to conduct its
share of the program.

"'(b) Have legislation adequate for the clearing
and protection of airport approaches, and
such other legislation as may be necessary
to vest in its political subdivisions all
powers necessary to enable them to par-
ticipate through the State as sponsors of
airport projects.

"'(c) Have no special tax on aviation facilities,
fuel, operations, or businesses the proceeds
of which are not used entirely for aviation
purposes.

"'(d) Insure the operation of all public airports
within its jurisdiction in the public interest,
without unjust discrimination or unreasonable
charges.

"'(e) Insure the proper operation and maintenance of
all public airports within its jurisdiction.

"'(f) Make airports developed with Federal aid avail-
able for unrestricted use by United States Govern-
ment aircraft without charge other than an amount
sufficient to cover the cost of repairing damage
done by such aircraft.

"'(g) Require the installation at all airports for
which Federal funds have been provided of a
standard accounting and fiscal reporting system
satisfactory to the Administrator.

"'That sponsors of projects be required to enter into
contracts with the Civil Aeronautics Administration
insuring the proper maintenance and protection of
airports developed with Federal aid and their operation
in the public interest.'

"Will you please inform this office if the statutes of
the State of Texas will meet all the requirements quoted
in the above paragraphs?"

The 49th Legislature passed an Act relating to aeronautics,
(Vernon's Texas Session Law Service, pp 580-585) which became ef-
fective September 3, 1945. This Act provides for the Texas
Aeronautics Commission to consist of three members. The purpose
of said Act and the powers given said Commission are as follows:

"Sec. 2.  Declaration.

"It is hereby declared that the purpose of this Act is to further the public interest and aeronautical progress by providing for the protection and promotion and development of aeronautics; by cooperating in effecting a uniformity of the laws relating to the development of aeronautics in the several states; by revising existing statutes relative to the development and regulation of aeronautics so as to grant to a State agency such powers and impose upon it such duties that the State may properly perform its functions relative to aeronautics and effectively exercise its jurisdiction over persons and property within such jurisdiction, may assist in the promotion of a state-wide system of airports, may cooperate with and assist the political subdivisions of this State in order that those engaged in aeronautics of every character may so engage with the least possible restrictions consistent with the safety and the rights of other person or persons; and by providing for cooperation with the federal authorities in the development of a national system of civil aviation and for coordination of the aeronautical activities of those authorities and the authorities of this State by assisting in accomplishing the purposes of federal legislation and eliminating costly and unnecessary duplication of functions properly in the province of the federal agencies.

"* * *

"Sec. 6.  General Powers and Duties of Commission.

"Subdivision 1.  The Commission is empowered and directed to encourage, foster, and assist in the development of aeronautics in this State, and to encourage the establishment of airports and other air navigation facilities, but will not have authority to promulgate rules and regulations which may impose a greater restriction upon aviation than now exists, and shall have no authority to impose economic control by way of regulations.

"Subdivision 2.  Legislation.  It may recommend necessary legislation to advance the interests of the State in aeronautics and represent the State in aeronautical matters before federal agencies and other State agencies.

"Subdivision 3.   Financial Assistance.   The Commission may render financial assistance in the acquisition, development, operation or maintenance of airports out of appropriations made by the Legislature for that purpose.

"Subdivision 4.   Authority to Contract.   It may enter into any contracts necessary to the execution of the powers granted it by this Act but shall have no authority to enter into any contract or agreement binding the State of Texas for the payment of any monies which have not been specifically authorized by appropriation of the Legislature, nor shall it enter into any contract or agreement binding the State of Texas in excess of the powers herein granted.

"Subdivision 5.   The Commission shall have no authority to issue certificates of convenience and necessity within the State of Texas.

"Subdivision 6.   The Commission shall conduct hearings and shall make investigation as it may deem necessary for the purposes of determining the location, type of construction, and the cost to the State of Texas of maintenance of emergency and all other classes of airports owned, operated, or directly financed in whole or in part by the State within the State of Texas.   It shall render assistance within its power, not inconsistent with this Act, to any such subdivisions of the State in procuring such aid as the federal government may grant for the purpose of establishing and maintaining airports.

"Sec. 7.   Federal Aid.
"Subdivision 1.   Cooperation with Government. The Commission is authorized to cooperate with the Government of the United States, and any agency or department thereof, in the acquisition, construction, improvement, maintenance and operation of airports and other air navigation facilities in this State, and to comply with the provisions of the laws of the United States and any regulations made thereunder for the expenditure of federal monies upon such airports and other air navigation facilities.

"Subdivision 2.   Authority to Receive Federal Monies for State and Municipalities.   It is authorized to accept, receive, and receipt for federal monies and other monies, either public or private for and in behalf of this State, or any municipality thereof, when authorized by the municipality to do so for the acquisition, construction, improvement, maintenance, and operation of airports and other air navigation facilities, whether such work is to be done by the State or by such municipalities or any other political subdivision of the State of Texas aided by grants of aid from the United States, upon such terms and conditions as are or may be prescribed by the Laws of the United States and any rules or regulations made thereunder, and it is authorized to act as agent of any municipality or other persons or person of this State upon the request of such municipality or person or persons in accepting, receiving, and receipting for such monies in its behalf for airports or other air navigation facility purposes, and in contracting for the acquisition, construction, improvement, maintenance, or operation of airports or other air navigation facilities, financed either in whole or in part by federal monies, and the governing body of any such municipality or other person or persons is authorized to designate the Commission as its agent for such purposes and to enter into an agreement with it prescribing the terms and conditions of such agency in accordance with federal laws, rules, and regulations and with this Act.   Such monies as are paid over by the United States Government shall be retained by the State or paid over to said municipalities or other person or persons under such terms and conditions as may be imposed by the United States Government in making such grants.

"Subdivision 3.   Contracts - Law Governing.   All contracts for the acquisition, construction, improvement, maintenance, and operation of airports, or other air navigation facilities made by the Commission, either as the agent of this State or as the agent of any municipality or other person or persons shall be made pursuant to the laws of this State, governing the making of like contracts; provided, however, that where the acquisition, construction, improvement, maintenance, and operation of any airport, landing strip, or other air navigation facility is financed wholly or partially with federal money, the Commission, as agent of the State or of any municipality or other person or persons thereof, may let contracts in the manner prescribed by the federal authorities, acting under the laws of the United States, and any rules or regulations made thereunder, notwithstanding any other State law to the contrary.

"Subdivision 4.   Disposition of Federal Funds.   All monies accepted for disbursement by the Commission pursuant to Subdivision 2 of this Section shall be deposited in the State Treasury, and unless otherwise prescribed by the authority from which the money is received, kept in separate funds, designated according to the purposes for which the monies were made available, and held by the State in trust for such purposes.   All monies are hereby appropriated for the purposes for which the same were made available, to be expended in accordance with federal laws and regulations and with this Act.   The Commission is authorized, whether acting for this State or as the agent of any of its municipalities or other person or persons, or when requested by the United States Government or any agency or department thereof, to disburse such monies for the designated purposes, but this shall not preclude any other authorized method of disbursement."

Article 1015c, Vernon's Annotated Civil Statutes, provides in part as follows:

"Section 1.   All cities and towns, including Home Rule cities, in the State of Texas, shall have power to build and purchase, to mortgage and encumber any of the hereinafter named project and/or projects, to-wit: * * * airports, and the land upon which the same are situated, either or all, and the income therefrom and everything pertaining thereto acquired or to be acquired and to evidence the obligation therefor by the issuance of bonds, notes or warrants, and to secure the payment of funds to purchase same or funds with which to construct and equip the same; and as additional security therefor, by the terms of such encumbrance, may grant to the purchaser under sale or foreclosure thereunder, a franchise to operate the projects herein enumerated and properties so purchased for a term of not over twenty (20) years after purchase, subject to all laws regulating same then in force.   No such obligation of any such project and/or projects shall ever be a debt of said city or town, but solely a charge upon the properties of the project and/or projects so encumbered, and shall never be reckoned in determining the power of any such city or town to issue any bonds for any purpose authorized by law.   (underscoring ours)

"Sec. 2.   None of the projects named in Section 1 of this Act, nor the land upon which the same are situated, shall ever be sold until such sale is authorized by a majority vote of the qualified voters of such city or town; nor shall the same be encumbered

for more than Five Thousand Dollars ($5000), except
for purchase money, or funds with which to construct
and equip the same or to refund any existing indebted-
ness lawfully created, until authorized in like man-
ner.  Such vote in either case shall be ascertained
at an election, which election shall be held and
notice thereof given as is provided in the case of
the issuance of municipal bonds by such cities and
towns, *.* *"

"Sec. 4.  It shall be the duty of the mayor of
such cities or towns to install and maintain, or
cause to be installed and maintained, a complete
system of records and accounts showing the free
service rendered, and the value thereof, and
showing separately the amounts expended and/or
set aside for operation, salaries, labor, materials,
repairs, maintenance, depreciation, replacements,
extensions, interest and the creation of a sinking
fund to pay off such bonds and indebtedness.

"It shall likewise be the duty of the superin-
tendent or manager of such project and/or projects
to file with the mayor of such cities or towns,
not later than February 1st, a detailed report of
the operations of such project and/or projects for
the year ending January 1st preceding, showing the
total sum of money collected and the balance due,
as well as the total disbursements made and the
amounts remaining unpaid as the result of operation
of such project and/or projects during such calendar
year.

"Failure or refusal on the part of the mayor to
install and maintain, or cause to be installed and
maintained, such system of records and accounts within
ninety (90) days after the completion of such project
and/or projects, or on the part of such superintendent
or manager, to file or cause to be filed such report,
shall constitute a misdemeanor and, on conviction
thereof, such mayor or superintendent or manager shall
be subject to a fine of not less than One Hundred
Dollars ($100), nor more than One Thousand Dollars

($1000); and any taxpayer residing within such city or town, or holder of such indebtedness, shall have the right, by appropriate civil action in the District Court of the county in which such city or town is located, to enforce the provisions of this Act."

Art. 1269h is in part as follows:

"Section 1. A-That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire, by purchase without condemnation or by purchase through condemnation proceedings, and thereafter maintain and operate as an airport, or lease, or sell, to the Federal Government, tracts of land either within or without the corporate limits of such city and within the county in which such city is situated, and the Commissioners' Court of any county may likewise acquire, maintain and operate for like purpose tracts of land within the limits of the county.

"B-That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire by purchase without condemnation, and thereafter maintain and operate as an airport, or lease, or sell to the Federal Government, tracts of land without the county in which such city is situated, provided said tracts are not within five (5) miles of another incorporated city that has a population of more than fifteen hundred (1500) people, according to the last preceding Federal Census.

"C-That the governing body of any incorporated city in this State may, and is hereby empowered, to acquire through condemnation proceedings, tracts of land located without the county in which said city is located, provided said tracts of land are within six (6) miles of the county boundary of the county in which said city is located, and are not within five (5) miles of another incorporated city having a population in excess of fifteen hundred (1500) people, according to the last preceding Federal Census; and that said city may thereafter maintain and operate as an airport, or lease, or sell, said tracts to the Federal Government; provided, however,

that the grant herein made to acquire land through condemnation proceedings, without the county in which said city is located, shall expire on December 31, 1942, but that tracts of land acquired prior to that date, and under the authority of this Act, may continue to be operated, leased, or sold, as provided in this Act.

"D-In addition to the power herein granted, the Commissioners' Court of the several counties of this State are hereby authorized to lease any airport that may be acquired by the county, as herein provided, to any incorporated city or municipality within such county, or to the Federal Government, for the purpose of maintaining and operating an airport; and provided further that any incorporated city having acquired land for an airport, or an airport, under the authority of this Act, shall have the right to lease said land or said airport to the county in which said incorporated city is located.

"E-In addition to the power which it may now have, the governing body of an incorporated city shall have the power to sell, convey, or lease, all or any portions of any airports heretofore established or that may be hereafter established, or any land acquired under the provisions of this Act, to the United States of America for any purpose deemed by the Government of the United States necessary for National Defense, or for air mail purposes, or any other public purpose, or to the State of Texas, or any branch of the State Government, or to any other person, firm, or corporation, to carry out any purpose necessary or incidental to National Defense or training incidental thereto; and that such governing body shall provide rules and regulations for the proper use of any such airports in connection with the purposes stated herein.

"Sec. 2. (a) For the purpose of condemning or purchasing, either or both, lands to be used and maintained as provided in Section 1 hereof, and improving and equipping the same for such use, the governing body of any city or the Commissioners' Court of any county, falling within the terms of such Section, may issue negotiable bonds of the city or of the county, as the case may be, and levy taxes to provide for the interest and sinking

funds of any such bonds so issued, the authority
hereby given for the issuance of such bonds and levy
and collection of such taxes to be exercised in ac-
cordance with the provisions of Chapter 1 of Title 22 of
the Revised Civil Statutes of 1925.

"* * *

"Sec. 3. Any airport acquired under and by virtue of
the terms of this Act shall be under the management and
control of the governing body of the city or the Commis-
sioners' Court of the county acquiring the same, which
is hereby expressly authorized and empowered to improve,
maintain and conduct the same as an airport, and for
that purpose to make and provide therein all necessary
or fit improvements and facilities and to fix such
reasonable charges for the use thereof as such governing
body or Commissioners' Court shall deem fit, and to make
rules and regulations governing the use thereof. All
proceeds from such charges shall be devoted exclusively
to the maintenance, upkeep, improvement and operation
of such airport and the facilities, structures, and
improvements therein, * * *

"Sec. 4. That in addition to and exclusive of any
taxes which may be levied for the interest and sinking
fund of any bonds issued under the authority of this
Act, the governing body of any city or the Commis-
sioners' Court of any county, falling within the
terms hereof, may and is hereby empowered to levy and
collect a special tax not to exceed for any one year
five cents on each One Hundred Dollars for the purpose
of improving, operating, maintaining and conducting
any airport which such city or county may acquire
under the provisions of this Act, and to provide all
suitable structures, and facilities therein. Provided
that nothing in this Act shall be construed as authorizing
any city or county to exceed the limits of indebtedness
placed upon it under the Constitution."

Art. 12691 is in part as follows:

"Sec. 1. All cities having a population of more than
One Hundred and Sixty Thousand (160,000) inhabitants
according to the last preceding federal census shall

have power to mortgage and encumber their airports
and everything pertaining thereto acquired, or to
be acquired, to secure the payment of funds to pur-
chase the same or to build, improve, enlarge, extend,
repair or construct any kind or character of permanent
improvements, including buildings, repair shops and
other structures, and, as additional security therefor,
by the terms of such mortgage or encumbrance, may grant
to the purchaser under sale or foreclosure thereunder
a franchise to operate such airport and the improve-
ments situated thereon for a term of not over thirty
(30) years after such purchase, subject to all laws
regulating the same then in force. No such obligation
shall ever be a debt of such city, but solely a charge
upon the properties so mortgaged or encumbered, and
shall never be reckoned in determining the power of
such city to issue any bonds for any purpose authorized
by law.

"Sec. 2. All cities having a population of more than
One Hundred and Sixty Thousand (160,000) inhabitants ac-
cording to the last preceding federal census shall have
power to pledge the income from their airports and
everything pertaining thereto acquired, or to be acquired,
to secure the payment of funds to purchase the same or to
build, improve, enlarge, extend, repair or construct any
kind or character of permanent improvements including
buildings, repair shops and other structures, and, as
additional security therefor, by the terms of such
pledge may grant to the purchaser under sale or fore-
closure thereunder a franchise to operate such airport
and the improvements situated thereon for a term of
not over thirty (30) years after such purchase, subject
to all laws regulating the same then in force. No such
obligation shall ever be a debt of such city, but solely
a charge upon the properties so mortgaged or encumbered,
and shall never be reckoned in determining the power of
any such city to issue any bonds for any purpose au-
thorized by law.

"Sec. 3. Such cities shall have the power to issue
notes or warrants in any sum not to exceed the sum of One
Hundred Thousand Dollars ($100,000.00) for such purposes
without submitting such proposition to a vote of the
qualified taxpaying voters. This law shall take pre-
cedence over all conflicting city charter provisions."

Art. 1269j is in part as follows:

"Section 1. In addition to the powers which it may now have, any city having a population of more than forty thousand (40,000) inhabitants, according to the last preceding Federal Census, shall have power (a) to own, maintain and operate an airport, either within or without, or partially within and partially without, the corporate limits of such city; (b) to construct, acquire by gift, purchase, lease or the exercise of the right of eminent domain, improve, enlarge, extend or repair any airport, and to acquire by gift, purchase, lease or the exercise of the right of eminent domain, lands or rights in land in fee simple in connection therewith; (c) to borrow money and issue its bonds or warrants to finance in whole or in part the cost of the acquisition, construction, improvement, enlargement, extension or repair of any airport; (d) to prescribe and collect rates, fees, rents, tolls or other charges for the service and facilities afforded by such airport; and (e) to pledge to the punctual payment of said warrants and interest thereon all or any part of the income, rents, revenues, tolls or other receipts derived from the operation of such airport, in addition to the taxes which shall be levied annually, for the payment of the principal and interest on such warrants. An airport within the meaning of this Act shall include all lands and buildings or other improvements necessary or convenient in the establishment and operation of an airport, and shall include such lands and improvements as are necessary to assemble or manufacture aircraft for military or naval uses, or for any other governmental purpose, and to provide housing and office space for employees necessary or incidental to such purposes.

"Sec. 2. Warrants may be authorized to be issued under this Act by ordinance which may be adopted at the same meeting at which it is introduced by a majority of all the members of the governing body of the city then in office and shall take effect immediately upon adoption. Such warrants shall bear interest at such rate or rates not exceeding five (5) per centum per annum, payable semi-annually, may be made payable to bearer, may be in one or more series, may bear such date or dates, may be in such denomination or denominations,

may be payable in such medium of payment, at such place or places, may carry such registration privileges, may be subject to such terms of redemption, may be executed in such manner, may contain such terms, covenants and conditions, and may be in such form, either coupon or registered, as such ordinance or subsequent ordinance may provide.  Said warrants shall mature annually in such amounts so that the aggregate amount of principal and interest falling due in each year shall be substantially equal over a period not to exceed thirty (30) years from their date.  Said warrants shall be sold at public or private sale at not less than par.  Said warrants shall be negotiable instruments within the meaning of the Negotiable Instruments Law of this State. Said warrants bearing the signature of the officers in office at the date of the signing thereof shall be valid and binding obligations notwithstanding that before the delivery thereof and payment therefor any or all of the persons whose signatures appear thereon shall have ceased to be officers of the city issuing the same.

"Sec. 3.  No city shall issue any warrants pursuant to this Act in an aggregate amount in excess of One Hundred and Twenty-five Thousand Dollars ($125,000).

"Sec. 4.  No election shall be necessary to authorize the issuance of warrants pursuant to this Act, but the city shall comply with the provisions of Chapter 163, Acts of the Forty-second Legislature, with reference to bidders and notice of intention to issue such warrants and the right to referendum therein specified shall apply.

"Sec. 5.  Whenever any city shall issue warrants pursuant to this Act, a tax sufficient to pay when due the principal and interest on such warrants shall be levied annually and assessed, collected and paid in like manner with other taxes of such city, provided, however, that if such warrants are payable from taxes and additionally secured by a pledge of the income, rents, revenues, tolls, and other receipts derived from the operation of the airport for which such warrants were issued, the tax to be levied and assessed by such city may be reduced by the amount of money on hand pledged to the payment of the principal and interest of such warrants.

"Sec. 6.  The governing body of a city issuing warrants pursuant to this Act shall prescribe by ordinance and collect reasonable rates, fees, tolls, rentals or other charges for the service and facilities furnished by the airport for which such warrants have been issued.  The rates, fees, tolls, rentals or other charges so prescribed shall be such as will produce revenues sufficient (a) to pay when due all warrants and interest thereon, for the payment of which such revenues shall have been pledged, including reserves therefor; (b) to provide for all expenses of operation and maintenance of such airport, including reserves therefor.

"Sec. 7.  The governing body of the city shall have the power to sell, convey, or lease all or any portion of such airports heretofore established, or that may be hereafter established, to the United States of America for the purpose of air mail or any other public purpose, including the purpose of runways for the landing of aircraft, the assembling or manufacture of aircraft or aircraft parts, or any other purpose deemed by the Government of the United States necessary for the national defense, or to the State of Texas or any branch of the State Government, or to any municipality for any such purpose, or to any other person, firm or corporation to carry out any necessary or incidental purpose; and that such governing body shall provide rules and regulations for the proper use of any such airports, whether used for pleasure, experiment, exhibition, commercial purpose, or for the national defense.

"Sec. 8.  The acquisition and operation of an airport are hereby declared to be a public purpose and a matter of public necessity.

"* * *

"Sec. 10.  The powers conferred by this Act shall be in addition and supplemental to the powers conferred by any other law, including any charter provision.  Insofar as the provisions of this Act are inconsistent with the provisions of any other law, including any charter provision, the provisions of this Act shall be controlling. If any provision of this Act, or the application of such provisions to any person, body or circumstance shall be held invalid, the remainder of the Act, or the application of such provision to persons, bodies, or circumstances other than as to which it is held invalid, shall not be affected thereby."

Art. 1269j-2 is in part as follows;

"Section 1.  For the purpose of securing and maintaining the safe and efficient operation and maintenance of all publicly owned or publicly operated airports, flying fields, and landing fields located within a distance of ten (10) miles computed by air line from the then existing city limits of any city in the State of Texas having a population of two hundred and eighty-five thousand (285,000) inhabitants or more according to the last preceding or any future Federal Census, and to protect the safety, lives, and property of persons owning property in the vicinity of such airports, flying fields, and landing fields, from and after the passage of this Act, the right, power and authority is hereby given to the City Council of such cities to extend the limits of said cities for the purposes named in this Act, so as to include within its limits all publicly owned or publicly operated airports, flying fields, and landing fields lying within a distance of ten (10) miles in an air line from the then existing city limits and, in addition thereto, to include all lands within a distance not to exceed three thousand (3,000) feet from the exterior limits of such airports, flying fields, and landing fields, by the passage of an ordinance extending the boundaries of such cities to include the territory aforesaid, or so much thereof as the City Council may consider advisable to add to the limits of said city, and such intervening land as the City Council may deem necessary and proper to accomplish the purposes of this Act.

"Sec. 2.  From and after the passage of said ordinance, extending the limits as aforesaid, by the City Council of such cities, said City Council shall have the right, power, and authority to, by criminal ordinance and otherwise, pass such ordinances under the general police power as may be necessary to promote the safe and efficient operation of said publicly owned or operated airports, flying fields, or landing fields only, and to promote and protect all airplanes and other flying craft in taking off from and landing at said airports, flying fields, or landing fields, and particularly including the right to regulate and limit the height of any building or other structure of whatever nature to be erected, and to be located, within a distance  of three thousand (3,000) feet from

the exterior limits of such airport, flying field, or landing field, to a height not to exceed thirty (30) feet within a radius of one thousand (1,000) feet surrounding said airport, and, to a height not to exceed seventy-five (75) feet from said one thousand (1,000) feet back to within said three thousand (3,000) feet, meaning from the ground level to the highest portion of any such building or structure."

Art. 7065b-13 is in part as follows:

"(a) Any person who purchases motor fuel in the State of Texas, and any distributor who appropriates motor fuel for use when such motor fuel purchased by such person or used by such distributor for operating or propelling any stationary gas engine or tractor used for agricultural purposes, motor boats, aircraft, or for any purpose other than use in a motor vehicle operated or intended to be operated in whole or in part upon any of the public highways, roads, or streets of the State of Texas, on which motor fuel tax has been paid, either directly or indirectly, shall be refunded the amount of such taxes so paid by the distributor, exclusive of the one (1) per cent deduction allowed distributors upon the first sale, distribution or use of said motor fuel, for collecting and remitting the tax and for evaporation and other losses in the manner and subject to the limitations and conditions described herein. Provided, however, that no greater amount shall be refunded than has been paid into the Treasury on any motor fuel. The tax actually paid by any distributor or person shall be refunded as provided herein on motor fuel not subject to the tax."

Art. 8, Sec. 1 of the Constitution of Texas, provides in part as follows:

"All property in this State, whether owned by natural persons or corporations, other than muncipal, shall be taxed in proportion to its value."

Art. 8, Sec. 2 of said Constitution, provides in part as follows:

"The Legislature may, by general laws, exempt from taxation public property used for public purposes;
* * *"

Art. 11, Sec. 9 of said Constitution, provides in part as follows:

"The property of counties, cities, and towns, owned and held only for public purposes, * * * and all other property devoted exclusively to the use and benefit of the public shall be exempt from * * * taxation."

Art. 7150 provides in part as follows:

"The following property shall be exempt from taxation, to-wit:

"* * *

"4. All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, or the United States, * * *"

The above are the statutes that have to do with the question submitted by you and, in our opinion, authorize the following answers to the various parts thereof:

(a) The Texas Aeronautics Commission is the only official state body or organization that is authorized to assist in the National Airport Plan, but we are unable to state whether or not it is equipped to conduct its share of said program as we are without information as to what its share therein may be, as well as what it may be called upon to do in making said Airport Plan effective.

(b) It is our opinion that the above quoted statutes provide for the clearing and protection of airport approaches, and that the political subdivisions referred to in said statutes have the necessary powers to enable them to participate in airport projects under the provisions of said statutes, but we do not find any statute authorizing the State to do more than act as an agent of such political subdivisions as may undertake to construct airports. Said Commission is not authorized to spend any money in connection with establishing airports, except its own incidental expenses for salaries of a director and other employees, office expenses, traveling expenses, etc., and no money has been appropriated for any other purpose.

(c) We are uncertain as to what is meant by subdivision (c) of your inquiry, but the parts of the Constitution and statutes hereinabove set out exempt from taxation all aviation facilities belonging exclusively to and used by the State, or a political subdivision thereof, or by the United States. City of Abilene vs. State, 113 S. W. (2) 631, writ refused. Provision is also made for the refund of the greater portion of any taxes that may be paid on any fuel used in connection with the operation of aircraft.

(d) We are of the opinion that said statutes authorize the operation of all public airports in this State in the public interest and without unjust discrimination or unreasonable charges.

(e) Said statutes are also sufficient to insure the proper operation and maintenance of all public airports within this State.

(f) Said statutes authorize a compliance with all of the laws of the United States and any regulations made thereunder for the expenditure of federal monies upon airports and other air navigation facilities; therefore, we are of the opinion that airports developed with Federal aid can be made available for unrestricted use by United States Government aircraft without charge other than an amount sufficient to cover the cost of repairing damage done by such aircraft, if this be required under the laws of the United States.

(g) We find no statute specifically authorizing the installation at each airport for which Federal funds have been provided a standard accounting and fiscal reporting system satisfactory to the Administrator, but it is our opinion that same is incidentally authorized.

The Texas Aeronautics Commission is authorized by said statutes to enter into any contract necessary to the execution of the powers granted to it, but it has no authority to bind the State of Texas for the payment of any monies that have not been specifically authorized by appropriation of the Legislature. It does have authority, however, to act as agent of any municipality, or other person or persons, in contracting for the acquisition, construction, improvement, maintenance, or operation of airports or other air navigation facilities, financed either in whole or in part by federal monies, if authorized to do so by such municipality, person or persons. It is our opinion, therefore, that said Commission is authorized to enter into contracts with the

Civil Aeronautics Commission insuring the proper maintenance and protection of airports developed with Federal aid and their operation in the public interest, if and when authorized to do so by such municipality, person or persons and when same is in accordance with federal laws, rules and regulations and with the Act creating said Texas Aeronautics Commission.

Your attention is directed to the fact, however, that the expenditure of federal monies in carrying out the National Airport Plan will likely be passed upon by federal authorities and many questions may be raised that will not come within the above general answers to the matters submitted by you. Such authorities may also not agree with our construction of these statutes; therefore, it may be necessary to consider each question raised in the handling of different airports.

APPROVED JAN 25 1946

ATTORNEY GENERAL OF TEXAS

JWB:LJ

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*

Jas. W. Bassett
Assistant

